IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

FEBRUARY TERM, 1868.

---

PRAY v. THE MAYOR AND COMMON COUNCIL OF JERSEY
CITY.

1. An action will not lie in behalf of an individual who has sustained
   special damage from the neglect of a public corporation to perform a
   public duty.
2. The plaintiff's horse having, by accident, come in contact with an ob-
   stacle in one of the streets of Jersey City, and which obstacle would
   not have existed but for the neglect of the corporate officers to fill in
   such street to the proper grade—*held*, a civil action would not lie
   against the city for the damage thus sustained.
3. The case of *Strader* v. *Freeholders of Sussex*, 3 *Harr.* 108, re-affirmed.

---

This case was tried before the Circuit Court of the county
of Hudson, and came before this court on a case certified.

The suit was for the loss of a horse, which was fatally in-
jured by coming in contact with an obstruction in one of
the streets of Jersey City. It appeared that the city author-
ities had authorized the water commissioners to build a

394

sewer in the street in question, and that in performing the work, as was usual and proper, holes were left to permit men to go, as necessity required, into the sewer, such holes being about three feet square, and coped with stone. One of these holes, at the place of accident, was raised above the surface of the street, in consequence of the neglect of the city to fill in the street to its proper grade. The plaintiff was driving a pair of horses near this hole, and one of his horses becoming frightened, pushed the other against the stone coping, thus impeding the way, and by this means the injury for which the suit was brought, was inflicted.

The case was argued before the CHIEF JUSTICE, and Justices VREDENBURGH, WOODHULL, and DEPUE, by *Jacob Weart,* for the plaintiff, and *R. D. McClelland,* for the defendants.

The opinion of the court was delivered by

BEASLEY, C. J. The present case turns on the solution of a single legal question, viz., whether a civil suit will lie against a municipal corporation, in consequence of damages sustained by an individual, by reason of a public street being in an improper condition. The defendants are charged with an omission of duty. It appeared on the trial that the sewer in the street was properly and skillfully constructed, the complaint being that the public authorities neglected to have the street filled in to the requisite grade, in consequence of which the coping of stone around one of the entrances into the sewer was left projecting, and formed the obstacle which occasioned the accident giving rise to this suit.

The question as to the extent of the responsibility, in a civil action, of a corporate body, entrusted by statute with the performance of a public duty, and receiving therefrom no profits or emoluments for itself, has recently received a very elaborate examination in the important case of *The Mersey Docks and Harbor Board Trustees* ads. *Gibbs and others, Law Rep., English and Irish Appeals, vol. I., p.* 93. A reference to this decision, in which the train of cases on

the subject are carefully collated and criticised, will disclose the fact of the great discordance in judicial opinion, with regard to the question involved. And it will also appear, from the briefest examination of the American reports, that the legal mind of this country upon this topic is in a similar state of dubiety. If the matter, therefore, were one *primæ impressionis* in this court, it is obvious a broad field for investigation would be thrown open; but such is not the case. I consider the question in this state as so entirely settled, that it admits of no debate. In the year 1840, the case of *The Freeholders of Sussex* v. *Strader*, reported in 3 *Harr*. 108, was decided, and the principle adopted, as one of the grounds of adjudication, was, that an action would not lie at the instance of an individual having suffered a special damage from the neglect of a corporate body, in the performance of a public duty. It is an utter misapprehension of the standing of the case to suppose, as was done on the argument·before us, that the conclusion of the court rested on the statutes of the state relating to bridges. The language used by the Chief Justice, and by Mr. Justice Dayton, who each delivered an opinion, is so clear, that the views entertained by the court, and the legal groundwork on which the result was put, cannot be deemed to be left in the least uncertainty. The case, then, before the court was not regarded in any respect as of an exceptional character, but was treated and decided as one of a class regulated and controlled by a rule of law, having a wide scope and embracing every instance within the reason of such rule. "The principle," says the Chief Justice, "I take to be this: that where a corporate body, whether of a municipal or of a private character, owes a specific duty to an individual, an action will lie for a breach or neglect of that duty, whenever such breach or neglect has occasioned an injury to that individual. But if such corporation owe a duty to the *public*, and neglect to perform it, although every individual comprising that public is thereby injured, some more, and some less, yet they can have no *private* remedy at the common law." Such was one of the

main grounds of decision in the case reported—a ground which, in principle, obviously rules the case now before this court. The rule of law thus promulged nearly thirty years years ago, has never, so far as I am aware, been disturbed by any hint of a doubt as to its propriety, from the bench. It has often, at the circuits, received a practical application, and it has, on several occasions, been recognized as a part of the legal system of the state, by this court. In *Cooley* v. *Freeholders of Essex*, 3 *Dutcher* 415, under circumstances apparently identical with those of the original case, the same doctrine was applied by this court. And in *Callahan* v. *Township of Morris*, 1 *Vroom* 161, in defining the obligation of the townships, with regard to the repair of highways, Chief Justice Whelpley remarks: "The common law casts upon the township the burthen of making and repairing its public highways, as it does upon the county that of making and repairing bridges. But the township is not liable civilly for a neglect of the duty, to anybody sustaining especial injury thereby, nor is a county, in a like case, for injury arising for non-repair of bridges. The duties are owing to the public—not individuals—and their performance is enforced by indictment, not suit by individuals."

But the most authoritative sanction of the doctrine is to be found in the case of *Livermore* v. *Board of Freeholders of the county of Camden*, 5 *Dutcher* 245. The suit was for a special damage, caused by the neglect to repair a bridge. In the Supreme Court the decision, which was against the liability of the defendants, went on the comprehensive theory that a public body was not amenable *civiliter*, in consequence of a neglect of duty. This case was afterwards, in the term of June, 1864, affirmed, and placed on a similar foundation in the Court of Errors, 2 *Vroom* 508. "That an action will not lie," says the opinion which was read on this last occasion, "in behalf of an individual who has sustained special damage from the neglect of a public corporation to perform a public duty, I consider the settled law of this state. This was the doctrine laid down by the Supreme

Court of this state, after much research and a careful consideration of the authorities, in the case of the *Board of Freeholders of Sussex* v. *Strader*, 3 *Harr.* 108, and the same principle was re-affirmed in the case of *Cooley* v. *Freeholders of Essex*, 3 *Dutcher* 415. These opinions, in my judgment, rest upon the solid foundations of ancient precedent and public policy."

From this review of the decisions, it is quite impossible to avoid the conclusion that the adjudication in *Strader* v. *The Freeholders of Sussex*, not only decided that case, but acknowledged and established an important rule of law, which is, that the neglects of agents of the public, in the discharge of their legitimate functions, cannot constitute the basis of an action in behalf of an individual who has sustained a particular damage. Such neglects are public offences, and must be remedied by indictment.

The plaintiff's case being within the regulation of this principle, he should have been non-suited at the trial, and the Circuit Court should be so advised.

Justices VREDENBURGH, WOODHULL, and DEPUE concurred.