129 N.J. Super. 319 (1974)
323 A.2d 533
JOHN PANEPINTO ET AL., PLAINTIFFS-RESPONDENTS AND CROSS-APPELLANTS,
v.
EDMART, INC. AND APKEL BUILDING CORPORATION, DEFENDANTS, AND CITY OF BAYONNE AND HENRY E. KRUSE, DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 21, 1974.
Decided July 18, 1974.
*320 Before Judges KOLOVSKY, FRITZ and DEMOS.
Mr. M. Stanley Susskind argued the cause for appellants.
Mr. Marvin S. Davidson argued the cause for respondents (Mr. Francis P. Meehan, Jr., attorney).
The opinion of the court was delivered by KOLOVSKY, P.J.A.D.
*321 In 1965 and early 1966 plaintiffs purchased from defendant Edmart, Inc. one-family homes in a building development in Bayonne known as "Shorecrest Homes." Edmart, Inc. had applied for, and had obtained in September 1964, subdivision approval for the development from the Planning Board of the City of Bayonne after posting a performance bond of $100,000 to assure the installation by it of various improvements, including streets, curbs, sidewalks, catch basins, fire hydrants and sewers.
On several dates beginning in May 1966  but all before the City of Bayonne adopted a resolution accepting the sewer lines in the development  the sewer lines backed up during heavy rainstorms, causing damage in the basements of plaintiffs' homes. The fault was found to be in the inadequate depth of the sewer lines as compared with the depth of plaintiffs' homes.
The city, after an investigation, instituted an action against the developer and the surety on its performance bond. That action was settled on terms which called for and accomplished the elimination of the problem by the installation of new sewer lines at a lower depth.
Plaintiffs instituted this action to recover the damages which they allegedly had suffered by reason of the floodings which had occurred prior to the installation of the new sewer line. Joined as parties defendant were: the developer, Edmart, Inc.; its "engineer and designer of the development," one Curley; its general contractor, Apkel Building Corporation (Apkel); the City of Bayonne and the city engineer, Henry E. Kruse.
After trial before the court without a jury a judgment was entered awarding plaintiffs a total of $35,629.44 against the City of Bayonne and Kruse, its engineer, and a total of $51,840.17 against Edmart, Inc. and Apkel Building Corporation.
Defendants Bayonne and Kruse appeal from the judgment against them. Defendants Edmart, Inc. and Apkel do not *322 appeal. Plaintiffs, by a cross-appeal directed only to Bayonne and Kruse, challenge the allocation of damages among the several defendants and the refusal of the trial court to award them damages "for mental anguish or physical pain or discomfort by reason of the repeated flooding."
However, we do not reach the merits of the cross-appeal since we are satisfied that neither the city nor its engineer should have been held liable in damages to plaintiffs and that the judgments against them must be reversed.
The trial court imposed liability on the municipal defendants because it found that the sewer system shown on the plans submitted by the developer to the planning board and the installation thereof were defective and concluded that the municipal defendants were chargeable with "affirmative" negligent conduct for which  under the purported authority of Fagliarone v. North Bergen Tp., 78 N.J. Super. 154 (App. Div. 1963), certif. den. 40 N.J. 221 (1963)  they could be held to respond in damages to plaintiffs.
The court recognized that neither of the municipal defendants had either designed or installed the sewer system. It explained its finding of liability thusly:
However that may be, the facts of this case bespeak of an affirmative action on the part of the municipality even though it did not design or install the system. We need go no further than the affirmative action of its Planning Board in approving the subdivision plan with its sewer system which it knew or should have known, with the exercise of reasonable care and diligence, was improperly designed and which was not capable of handling the volume of drainage and sewage required for the subdivision. In granting its approval, it was acting as affirmatively as the Township of North Bergen did in Fagliarone in bringing about the damage which ensued on the property owners.
Further, its failure to inspect and supervise the installation was, in the contention of this case, an affirmative wrongdoing  the kind of positive misfeasance which has been the foundation of municipal liability in negligence law.

* * * * * * * *
In the case at hand, however, we are dealing with what is a public improvement located on public property and which is intended to become public property and operated and maintained by the municipality. The home owner is certainly in no position to pursue the *323 design adequacy or to supervise the installation of a sewer system or to establish standards and specifications to be followed by one who becomes obligated to make the installations by reason of a municipal subdivision ordinance.
That function is particularly the responsibility of the municipality.
I conclude, therefore, that the City of Bayonne is liable to the plaintiffs for all damages caused by the back-up of water and sewage into their homes for the period of their occupancy and ending with the completion, with the replacement of the sewer system in or about November of 1968. * * *
What has been said of the liability of the municipality applies with even greater force to that of the defendant Kruse. He failed to perform the duty cast upon him not only by the accepted standards of practice within his profession, but by the very terms of the subdivision ordinance. He was, in short, negligent in the performance of his duties, and he is liable to the plaintiffs who are the reasonably foreseeable victims of that negligence.
Fagliarone v. North Bergen Tp., supra, furnishes no support for the trial court's conclusion. In that case the municipality itself planned, constructed and maintained a sewer line which was found to be defective and inadequate so that flooding resulted. The court ruled that what was shown was a "negligent act of commission" rather than a mere "error in judgment," so that plaintiffs would be entitled to some remedy. But it made no determination as to what that remedy would be, saying:
In any event, we are not here concerned with the problem of remedy; the sole question before the court is defendant's alleged negligence and liability. The litigation has not arrived at a point where the proper remedy for the existing condition must be determined. That remedy will be fashioned at the second stage of this action, when the court deals with the questions of the scope of the mandatory injunction and the damages which plaintiffs demand. [at 157]
Before leaving our consideration of Fagliarone, it may be noted that in Barney's Furniture Warehouse v. Newark, 62 N.J. 456 (1973), the court found it not necessary to express an opinion "as to the soundness of the distinction drawn in [Fagliarone] between negligence and an `error in judgment.'" (At 467)
*324 In Barney's the court reversed a judgment against the city for damages sustained by properties in Newark caused by flooding due to inadequate sewer facilities, holding that the alleged default of the city in failing to provide adequate sewerage was "of a nature involving exercise of legislative judgment and discretion" (at 470) and so did not "permit the sanction of an imposition of damages for the result of its exercise." (At 469)
In the course of its opinion in Barney's the court referred to Harrington v. Woodbridge, 70 N.J.L. 28 (Sup. Ct. 1903), the "leading case in this jurisdiction" relating to "municipal tort liability for flooding or inadequate drainage arising out of the operation of sewer systems." (At 464 of 62 N.J.)
In Harrington the declaration sought damages from defendant municipality because allegedly the public sewer line with which plaintiff's house was connected by a lateral pipe lacked a proper pitch or fall or capacity, with the result that the cellar of plaintiff's house was periodically flooded with water and sewage. In sustaining a demurrer to the declaration the court said  in language quoted with approval in Barney's:
* * * Consequently, the pith of the complaint against the defendant is that it failed to construct the public sewer with such capacity and fall as would enable the plaintiffs safely to connect their cellar with it.
This complaint is without legal basis. The general doctrine on this subject is that in devising a plan for the construction of public sewers the public authorities discharge a quasi judicial duty, involving the exercise of judgment and discretion with regard to general convenience, and that their wisdom in the performance of that duty is not subject to review in a private suit brought to recover damages because of their error. They owe to no individual the duty of devising such a plan as will afford to him sufficient drainage. [70 N.J.L. at 29]
Here there is even less justification for imposing damage liability on the municipal defendants than there would have been in Harrington and Barney's. Here, the municipal defendants did not plan or install the sewer systems. That was *325 done by the developer from whom plaintiffs bought their houses and the sewer system was not accepted by the municipality until after the floodings here involved and after the deficiencies in the sewer system had been corrected.
We may accept the trial court's finding that the city engineer and the city's planning board were negligent in approving and accepting the plans submitted by the developer and in their inspection and supervision of the installation of the original sewer.
However, the decisions thus made in conceded good faith by the public officials involved the performance and exercise of discretionary quasi-judicial functions and duties, and so afford no basis for imposing liability in damages either on the engineer or his employer, the city, even if they or either of them acted negligently in the performance of those functions. Plaintiffs have cited us no case which has imposed liability on a city or its engineer in similar circumstances. On the contrary, the cases and authorities dealing with the question whether tort liability should be imposed on governmental units or their employees for the negligent performance of quasi-legislative or quasi-judicial duties are all to the contrary. See Visidor Corp. v. Cliffside Park, 48 N.J. 214 (1966); Hoy v. Capelli, 48 N.J. 81 (1966); Willis v. Dept. of Cons. & Ec. Dev., 55 N.J. 534, 540-541 (1970); Annotation, "Municipal Corporation  Liability," 41 A.L.R.3d 567 (1972); Fiduccia v. Summit Hill Const. Co. Inc., 109 N.J. Super. 249 (Cty. D. Ct. 1970); Jaffe, "Suits Against Governments and Officers: Damage Actions," 77 Harv. L. Rev. 209, 223 (1963).
As the court said in Willis v. Dept. of Cons. & Ec. Dev., supra, after first holding that the State may be sued in tort:
* * * But we do emphasize that the State will not be held liable for legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial cast, nor generally with respect to decisions calling for the exercise of official judgment or discretion. This limitation seems to be uniformly accepted, as we pointed out in Hoy v. Capelli, supra, 48 N.J. at 89, and Visidor *326 Corp. v. Borough of Cliffside Park, supra, 48 N.J. at 218-223. In those cases, we invoked the same limitation with respect to the liability of municipal corporations. [55 N.J. at 540-541]
The same immunity exists in favor of a municipal officer or employee who, called upon in circumstances such as were present here to exercise his judgment and discretion, acts in good faith, albeit negligently. Bedrock Foundations, Inc. v. Geo. H. Brewster & Son, Inc., 31 N.J. 124, 138 (1959); Jaffe, supra, at 223.
The judgment against defendants City of Bayonne and Kruse is reversed and judgment entered in their favor. No costs to any party on this appeal.